We'll hear the next case, Housechild v. U.S. Marshals Service. Good morning, and may it please the court, I'm Thomas C. Antra of the law firm Cone Weiss & Simon. With me is my colleague Kate Swearingen. We are counsel for the appellant, former court security officer Daniel Housechild. I'd like to begin my presentation by discussing the procedural posture of this appeal. The decision to dismiss by the Southern District was issued before this court's decision in the Atterbury case. Atterbury presented identical claims by a court security officer challenging his removal by the Marshals Service from its court security program. That is correct, Your Honor. No, actually, I think a decision here would profoundly inform the district court because, in fact, the same argument that is now being advanced by the government here has been advanced in the Atterbury court and is waiting decision by... What is that? That is the argument that Mr. Housechild does not have a property interest in continued employment sufficient to trigger the protections of due process of law in connection with the Marshals Service's decision to remove him from the court security program. The trial court here did not reach that question. That is the question that is now presented because the Marshals Service has conceded that the decision in the Atterbury case precludes or undermines the district court's conclusion that Housechild's Administrative Procedure Act claim is barred by the Tucker Act, is interest claim is what is going back to the district court at Atterbury for a determination? That is correct. That is now pending summary judgment in the Western District in the Atterbury case. That is one of the arguments that is involved there. The issue that is involved here that the Marshals Service has raised as a grounds to support dismissal of Housechild's claim is, in fact, that very question. We would submit that that argument should be rejected by this court under the authority of its prior decision in the Stein case from I believe it was 1979. That case was recognized in Atterbury as being quite parallel to the situation of a court security officer who was removed by the Marshals Service. Stein was a bus driver. Tell us about this case. How is there a property interest in continued employment here? What is the basis for that argument? As in Stein, the just cause protection in the collective bargaining agreement between the private contractor here, the call security, and the union. There is another provision that says when the Marshals Service decides to reject the CSO that the procedures don't apply. So that an employee may be terminated without recourse to the procedures under this agreement. That's right. The government argues that that eliminates the just cause requirement. That is incorrect, Your Honor. It does not apply. If just cause was in there, then it would be a disconnect, right? I mean, you'd have to have procedures in place. No, you wouldn't, Your Honor. I mean, it seems to me that saying that there are no procedures, you're in effect saying there's no just cause required. No, Your Honor. That's not the case because the fact that the grievance and arbitration procedures under the agreement are not applicable to the removal does not mean that that provision is unenforceable. Under the VACA case, the VACA v. Sipes case from the Supreme Court, it's quite clear that there is a breach of labor agreement claim, a Federal breach of labor agreement claim. What would happen if we agreed with you that it was sent back for the due process to be properly accorded to your client? What would that due process . . . I mean, what would we be ordering? Would we be ordering that they have a hearing, that they have a hearing and they then come out with an opinion that explains why . . . What do you get out of this if you win? If we win, Your Honor, we would be back in front of the district court and we would certainly argue that the process that was afforded here did not remotely comport with constitutional standards. What is required . . . Supposing you win there, what are you after, ultimately? There would need to be a determination of what process was due. I think you would look to, certainly as a guide, we would contend, you should look to the process that the government is bound to apply in the case of a Deputy U.S. Marshal who is removed. Of course, the  process that you're looking for is the procedural due process. Whatever it is . . . Absolutely. . . . they can give you all the process you want and at the end say, too bad, we don't want you, we think you're a bad court security . . . Yes, but what's involved here . . . You get the damages between now and the time he was relieved. Yes. But then he's relieved. Right, but, and this is why this case is being litigated, he is entitled to notice and an opportunity to be heard. The government should be required to tell him what he did wrong, what they believe he did wrong, what the evidence is that they're relying on, and give him an opportunity to respond to it. They did none of that. That's the gist of this case. It's clear from the Stein case that a collectively bargained agreement with a third party, the private contractor, can support a property interest. This case does not present a situation where removal is excluded from the just cause protection. It's an exclusion from the grievance process in the agreement, but that still, as a matter of federal labor law, leaves an enforceable contract within the meaning of section 301 of the labor law. Is there an ambiguity there? I do not believe that there is an ambiguity. If there was an ambiguity, Your Honor . . . You don't think it could be reasonably construed to mean that when they say without recourse to the procedures, that that includes the just cause requirement? I do not believe that it is, and if it was ambiguous, the opposite rule would apply, which is that the courts are to construe the grievance and arbitration agreements liberally to encourage coverage. So, if anything, the ambiguity would be to conclude that it was covered by the grievance and arbitration provision. I don't think it is. I don't think it is. Or you have to apply contract principles on how to deal with an ambiguity in a contract. Yes, but in terms of construing the agreement to arbitrate, the Supreme Court in the Steelworkers Trilogy and in the Misko case has made clear that those clauses are to be read to . . . liberally to find coverage. In any event, I mean, as the D.C. Circuit in the Cephas case, which we cite, that involved the same clause in the collective bargaining agreement. It was clear that that court concluded that in that case, where the contractor was acting at the direction of the marshal service, that the claim, while not subject to the grievance and arbitration provisions, still stated a cognizable breach of the labor agreement claim under Section 301. All right. You have some time for rebuttal. We'll hear from the government. May it please the Court. Good morning, Your Honors. My name is Brandon Cowart, representing the United States Marshal Service. The marshal service is requesting that the Court affirm the district court judgment dismissing the complaint brought by the appellant. The questions that the Court made to appellant's counsel, I think, raise the two most important issues in the case. The first is whether and in what sense the Second Circuit's decision in Stein controls the outcome in this case. And the second issue is, in the just cause provision itself, what does the without recourse language imply? In other words, what is the significance of the fact that the appellant cannot access the grievance procedures that are set forth in the CBA? So addressing the Stein issue first, the Stein, the just cause provision in the Stein decision was categorical. The only information that we know about the clause is that it says simply that the employee will not lose their job except for good cause. That's the end of it. And when you read the Court's decision, the Court then said the reason why Mr. Stein had a property interest is because the government's action provided the good cause to terminate the Mr. Stein's position. In other words, when the government in that case issued the direction to the government contractor to remove Mr. Stein from the government contract, that employee nonetheless still had and was entitled to protections of the good, of the just cause provision. Why isn't that true here as well? Notwithstanding the fact that he loses his grievance procedure rights, he still has a basic due process right, and you could argue here that this is just cause, what the Marshal's position constituted just cause under the CBA. Your Honor, the answer to that question is, first of all, the language in the just cause provision itself in this case is not categorical. The first sentence of the just cause provision in this case, which is Section 8.1 of the Collective Bargain Agreement, is almost the same as the just cause language in the Stein case. But if you read the second sentence of Section 8.1, it says that if the Marshal's take certain actions which cause the equal employee to lose his or her status as being eligible to work on the Marshal's service contract, in that instance, that employee, quote, may be terminated. That's what the language says. The employee may be terminated without recourse to the procedures under this agreement. But does that necessarily mean that just cause has been removed from the equation? Your Honor, I think the way to parse the second sentence is to essentially split it at that point, where the way that the second sentence of the just cause provision reads, it reads that the employee may be terminated. The other part of the language which says without recourse to the grievance procedures, that is simply a forum selection provision. It either would or would not allow the employee to grieve over their action that's been taken, but that doesn't establish the existence of the property right to begin with. The property right to begin with, the property right that's at issue must arise from mandatory language in an employment contract that guarantees an employee will only lose their job if and only if there is just cause. The language in the second sentence of Section 8.1 is not mandatory. The second part of the second sentence, which is without recourse to the grievance procedures in the situation, a place where the right may or may not be litigated, it does not establish the right that we have here. And to emphasize the point, if the Court will look to Section 2.5 of the... Is there some ambiguity there at a minimum? No, Your Honor. I don't believe there's an ambiguity. If you look at the, if you look at Section 2.5 of the Collective Bargaining Agreement, which deals with probationary employees... The second sentence says that an employee can be terminated without just cause in that circumstance. That's correct, Your Honor. That's not what it says. Your Honor, the test for whether there's a property right or not is this. Is, does the language that we're looking at, is it mandatory that an employee can or cannot use their job, can or cannot lose their job, without just cause? The term may be terminated is not mandatory. The term may means... Without recourse to the procedures. That's correct, Your Honor. That's a procedural provision as opposed to a substantive provision as to whether there must be just cause. Your Honor, there are a couple of points on that. If the, if the employee is terminated if the second sentence were just about whether or not there's been provided as a grievance procedure or not, then you would expect the, without recourse to the grievance procedures, that exception to be in Article 9, which is where the, which is where the grievance procedure is set forth in the CBA. But that is not located there. But it would have been a very simple matter to say it may be terminated without just cause. But that's true, Your Honor. But the, the test, again, is not whether the language has been artfully, has been, whether the language is artful or not. The issue is... The question is, if you've got an ambiguity here and one interpretation would indicate that he has a property right, but, and then he loses certain procedures in order to vindicate that property right, but he has other procedures that are not mentioned, that's one thing. And the other is, is that he has no property right because there's no just cause requirement. So, you know, it's, it's, it's, this is an ambiguity that matters in this case. But, Your Honor, again, I think that the, the ambiguity would arise if the, the, the, the access to the grievance procedure would, is, has anything to do with whether or not there is a property right. In other words, you can go and grieve, you can go and grieve the actions of the employer. Can we remand this to let the district court take the first crack at it to decide whether there is an ambiguity, and if so, how that ambiguity should be resolved? Your Honor, I think that the language itself, if we look at the language in, in Section 8.1, there is a dichotomy, and that dichotomy is the first sentence which says shall not, and in the second sentence of this clause it says may be terminated. The first sentence is very clear and broad. The second sentence is, is, is a little unclear. You know, I think that one of the issues that's bothering the court. Why, why shouldn't we let the, the district court take a look at this and, and consider whether there's an ambiguity, and if so, whether there's any extrinsic evidence and apply the rules of, of contract construction? Your Honor, granted if there is an ambiguity, then if, if the court determines that there would be, it would be assistance of the court to have the district court take a first crack at it, government understands the position of the court. However, the, the questions before the court is a question of contract interpretation. And some of the other issues. The first question is whether there is an ambiguity, and we seem to be struggling with that question. Let me, let me take another. Our struggles would suggest that maybe there is an ambiguity there. Well, let me take another, let me take another crack at perhaps delaying the court's concerns. If the court will turn its attention to section 2.5 of the grievance of the, of the CBA, that provision relates to probationary employees, and it uses the, the exact same language. Should have you referred to just then. Section 2.5, Your Honor. 2.5. And the language in that provision states that it's a, that probationary employees are allowed, are, are going to be on probation for 90 days. And during that 90-day period, the, the employees may be represented by their union in certain instances. But that provision also says that the employer retains the right to take certain actions, including termination of the probationary employee's position without recourse to any of the, without recourse to any of the grievance procedures in the agreement. Now, the parallel use of the without recourse language with a probationary employee who clearly has no just cause protection, it's the same language that's being used in section 8.1. Again, in the situation in which. I'm not sure which way that cuts, frankly. What, Your Honor, the, what, Your Honor, the idea in both situations is that they're talking about an, an employee which does not have the just cause protections. And so, in the, well, I don't have time to, if there are any other questions that the panel would like me to address. This issue is not a live issue in the Atterbury remand, is that correct? Your Honor, yes, Your Honor. In the Atterbury remand, the court specifically held that it, it was not passing on the merits of whether or not the, the plaintiff in Atterbury had the due, the property rights that were at issue. Instead, the court. The issue wasn't briefed, right? The, the issue wasn't raised. It was not before, it didn't raise the issue with the court. The court remanded, remanded the case. In our case, we, that was the, one of the bases of our motion to dismiss. So, we fully briefed that issue before the district court. Thank you, Your Honor. All right, thank you. We hear the rebuttal. I'd like to just briefly address two points and then obviously any questions the panel might have. First, with respect to the, the question of the rights of probationary employees. The reason probationary employees are not covered by the just cause standard of the agreement is the first sentence of section 8.1. Which reads, no employee, after completion of his or her probationary period, shall be disciplined or terminated without just cause. That's what's, what excludes probationary employees from the protection of the just cause provision. That sentence is mandatory. It applies to every employee who has been discharged or terminated who is no longer within that probationary status. It applied to Mr. Hauschild as well. I'll respond to the government's argument that if the second sentence of section 8.1 were just a procedural question, you would find it in article 9 governing, governing grievance procedures. It's immaterial where, where it applies. It's, it, it, this is an issue that repeatedly comes up in labor relations involving court security officers and private contractors. I would point the panel to the Stolberg case, which is discussed in the brief. This is a Ninth Circuit decision that involved a court security officer collective bargaining agreement. And there, the parties to that contract handled this issue quite a bit differently. And the Ninth Circuit found that to be a hybrid case where removals were excluded from the just cause protection. So parties know how to do that. I mean, here is the language. This is at 350 Federal Appendix 114. The contract there provided that, quote, no employee shall be dismissed or suspended without just cause unless the company is directed by the U.S. government to remove the employee from working under the employer's contract with the U.S. government or if the employee's credentials are denied or terminated by the U.S. MS. That is what the government says, section 8.1 says. It does not say that. What section 8.1 says is that no employee may be dismissed except for just cause, except in the case where there is a removal. That is not subject to the grievance and arbitration provision. That is materially different from the type of clause that's involved in the Stolberg case where the contractor and the union agreed explicitly that just cause would not apply to decisions where the government was removing the court security officer from the program. It's materially different. This clause cannot support the government's reading. The appellant clearly has a property interest. The decision of the district court should be reversed and remanded. Very good question. We're talking about dismissal. This is an odd situation because there are three parties involved instead of two. I was thinking about a case in which this court were to say, as an aside, we somehow have an awful lot of catered affairs for visiting lawyers from various parts of the city, country, and world. We have a caterer that we use all the time. Supposing we said to the caterer, this guy, Joseph, that you have, he just doesn't have it. He's not very good. People don't like him. So we say, we don't want to see him around here anymore. And so they say, sure, that's all right. And then they fire him because they have nothing else for him to do. Doesn't a property right arise there in any way with that? That gets you back to the Stein case. And if Joe, the guy working for the catering company, was covered by a just cause provision in a collective bargaining agreement, then, yes, there would be a property entitlement. And the decision to effectively terminate his employment, there would have to be some process afforded him. Why would the marshal service be bound by that agreement? In other words, just cause to fire, it's not really the marshal service firing. It's the marshal service putting in motion the firing. That is the holding in the Stein case, that the collective bargaining agreement, even though it isn't with the government entity there. I believe it was part of the city's board of education. What is the reasoning for that? The reasoning for that is that the employee has a property entitlement that's recognized, that's created by that contract, that the government has to respect, that the government is not simply writing on a blank slate. It has to take into account the rights that the individual has before in connection with its decision making. I mean, look, the issue here, and the marshal service points this out, there's no question, the marshal service is the decider here. We're not contesting that issue. The marshal service gets to make the decision. The question is process. What's the process that they have to follow in making that decision? The decision, I'm trying to divide the decision to say he's no longer a court security officer with the decision he is no longer an employee of ACA. Theoretically, in many cases, I would think the person you're dealing with, the ACA, in any case, might have hundreds of different clients, and all you're saying is don't work on mine. It's up to ACA what they do with you. Your employment agreement is with ACA, not with me. I understand your point to me. No, that's not right. I have created a property right, and I have to give them due process before I permit, before I set in motion a chain of events that results in this being filed. Yes, Your Honor. There's no evidence that ACA offered Mr. Hauschild another position. There was no other position. As a practical matter, once the government revoked his credentials and said you cannot work as a court security officer, his career as a court security officer ended. He'd been doing this for 20-something years. I understand that, but that doesn't mean his career as a security officer could not continue with some other client of ACA. That is a possibility, but that isn't the record of what happened. What happened here was they revoked his credentials. The only problem with this case is the Marshalls did not sign on to the collective bargaining agreement. Well, the Marshalls Service is not a party to the collective bargaining agreement, but they are no stranger to it because it's in— You're saying they're bound by it. They are bound to respect it under the court's decision in the Stein case. They have to, in light of the fact that— The Marshalls Service had an agreement with ALCON, which to some extent incorporated the terms of the collective bargaining agreement. The Marshalls Service's contract with ACA references that it would incorporate the terms of the collective bargaining agreement. It's no stranger to the collective bargaining agreement in the sense it's not a party to it. But they know that there was a collective bargaining agreement. Right. Under the Service Contract Act, it has the right to review the contract and it has substantive rights with respect to objecting to its terms. Were you saying that there's sort of an estoppel point if they argue that they're not bound by the contract because they had a duty to review it and they approved it and all of that? Is that in this case? I don't know, Your Honor, if I'm going so far as to argue that they're estopped. I don't know if I can get estoppel against the government. Maybe it's something I ought to consider. But I'm certainly saying so much that they are not the terms of the agreement are not unknown to them. They are aware of the terms of the agreement. And they're not strangers to it in that sense. Their contract reflects it has to be incorporated. A property right is the right to work for ACA as a court security officer rather than to work for ACA. I believe that's right. Mr. Housechild was employed as a court security officer. He was credentialed by the Marshal Service in its court security program. The collective bargaining agreement covers the court security officers. It covers it, but it also covers other employment, doesn't it? No, it does not, Your Honor. It covers the court security officers and lead court security officers, in this case employed in the subcommittee. They're only covered. In other words, it's isolated. It's not just for ACA employees. It's for ACA employees who are court security officers. That's correct, Your Honor. All right. Thank you. We'll reserve decision. The remaining cases are on submission. I'll ask the clerk to adjourn. Court is adjourned.